**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BLUE BUFFALO COMPANY LTD., | |
| Plaintiff, | **Case No. 14 Civ. 1665 (JCH)** |
| v. | |
| NESTLÉ PURINA PETCARE COMPANY, | **February 6, 2015** |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

THE COMPLAINT .....................................................................................................3

    1.    Beggin' Strips .................................................................................................3

    2.    Cat Chow Naturals.........................................................................................4

    3.    Fancy Feast Filet Mignon Flavor with Real Seafood & Shrimp .........................4

    4.    Beneful ..........................................................................................................4

    5.    ONE SMARTBLEND and Pro Plan................................................................5

    6.    Chef Michael's ...............................................................................................5

    7.    Just Right .......................................................................................................5

    8.    Waggin' Train and Canyon Creek Ranch ..........................................................5

ARGUMENT...............................................................................................................6

    A.    THE COMPLAINT STATES A CLAIM UNDER THE LANHAM ACT.........7

        1.    Whether "Reasonable Consumers" Are Deceived by Nestlé
            Purina's False Advertising Is a Question of Fact, Not Grounds for
            Dismissal...............................................................................................8

        2.    Compliance With Labeling Conventions Is Not Grounds for
            Dismissing a Lanham Act Claim ............................................................12

        3.    The Ingredient List on Nestlé Purina's Packaging Is Not Grounds
            for Dismissal ........................................................................................15

        4.    Defending the False Advertisements as "Puffery" Is Not Grounds
            for Dismissal ........................................................................................18

    B.    BLUE BUFFALO'S CUSPA CLAIM IS ACTIONABLE ................................23

    C.    BLUE BUFFALO'S COMMON LAW UNFAIR COMPETITION
        CLAIM IS ACTIONABLE ..............................................................................24

CONCLUSION...........................................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A & R Body Specialty* v. *Progressive Cas. Ins. Co.*,
   No. 07 Civ. 929, 2013 WL 718622 (D. Conn. Feb. 27, 2013) ....................................23

*Ackerman* v. *Coca-Cola Co.*,
   No. 09 Civ. 395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .........................*passim*

*Am. Home Prods. Corp.* v. *Johnson & Johnson*,
   577 F.2d 160 (2d Cir. 1978) ..................................................................................6, 10

*Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*,
   No. X08CV030196141S, 2013 WL 3958298 (Conn. Super. Ct. May
   24, 2013) ..............................................................................................................23, 24

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009).....................................................................................................6

*Baer* v. *New Eng. Home Delivery Servs., LLC*,
   No. CV064021976, 2007 WL 3173701 (Conn. Super. Ct. Oct. 18,
   2007) ..........................................................................................................................25

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices
Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ......................................................................14

*Charter Comm., Inc.* v. *Southwestern Bell Tel. Co.*,
   202 F. Supp. 2d 918 (E.D. MO. 2001) ......................................................................20

*Clorox Co. Puerto Rico* v. *Proctor & Gamble Co.*,
   228 F.3d 24 (1st Cir. 2000)........................................................................................11

*In re Frito-Lay N.A. Inc. All Natural Litig.*,
   No. 12 MDL 2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)............................11

*FTA Mkt. Inc.* v. *Vevi, Inc.*,
   No. 11 Civ. 4789, 2012 WL 383945 (S.D.N.Y. Feb. 1, 2012)..................................7, 9

*Gedalia* v. *Whole Foods Mkt. Servs., Inc.*,
   --- F. Supp. 3d ---, 2014 WL 5315030 (S.D. Tex. 2014).............................................17

*Genzyme Corp.* v. *Shire Human Genetic Therapies, Inc.*,
   906 F. Supp. 2d 9 (D. Mass. 2012) .............................................................................9

*Gmurzynska* v. *Hutton*,
  257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir.
  2004) ...................................................................................................................7

*Gordon & Breach Science Publishers* v. *Am. Inst. of Physics*,
  859 F. Supp. 1521 (S.D.N.Y. 1994) ...............................................................10

*Goss* v. *Birnbaum Furniture Co.*,
  21 Conn. Supp. 207 (Conn. Super. Ct. 1959) .................................................25

*Hairston* v. *S. Beach Beverage Co.*,
  No. 12 Civ. 1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................17

*Hughes* v. *Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................16

*Ingrid & Isabel, LLC* v. *Baby Be Mine, LLC*,
  --- F. Supp. 3d ---, 2014 WL 5507669 (N.D. Cal. 2014)................................9

*JHP Pharms., LLC* v. *Hospira, Inc.*,
  --- F. Supp. 3d ---, 2014 WL 4988016 (C.D. Cal. 2014)...............................14

*Johnson & Johnson* v. *Smithkline Beecham Corp.*,
  960 F.2d 294 (2d Cir. 1992) ...............................................................9, 10, 11

*Jou* v. *Kimberly-Clark Corp.*,
  No. 13 Civ. 3075, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ..................17

*Koenig* v. *Boulder Brands, Inc.*,
  995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ....................................................10

*Lam* v. *General Mills, Inc.*,
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..........................................................17

*LivePerson, Inc.* v. *24/7 Customer, Inc.*,
  --- F. Supp. 3d ---, 2015 WL 249329 (S.D.N.Y. Jan. 16, 2015)....................7

*McKinniss* v. *Sunny Delight Beverages Co.*,
  07 Civ. 2304, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .........................18

*Mountain W. Helicopter, LLC* v. *Kaman Aerospace Corp.*,
  310 F. Supp. 2d 459 (D. Conn. 2004)..................................................24, 25, 26

*Nasdaq Stock Mkt., Inc.* v. *Archipelago Holdings, LLC*,
  336 F. Supp. 2d 294 (S.D.N.Y. 2004) .....................................................10, 19

*Pelayo* v. *Nestlé USA, Inc.*,
  989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................17

*Pizza Hut, Inc.* v. *Papa John's Int'l, Inc.*,
   227 F.3d 489 (5th Cir. 2000) ..................................................................21

*POM Wonderful LLC* v. *Coca-Cola Co.*,
   134 S. Ct. 2228 (2014)..............................................................2, 13, 18

*Process Controls Intern., Inc.* v. *Emerson Process Mgmt.*,
   753 F. Supp. 2d 912 (E.D. Mo. 2010) .......................................................10

*QSP, Inc.* v. *Aetna Cas. & Sur. Co.*,
   256 Conn. 343 (2001) ..................................................................25

*RW Grp., Inc.* v. *Pharmacare Mgmt. Servs., Inc.*,
   No. X07CV054003840S, 2006 WL 1320225 (Conn. Super. Ct. Apr.
   27, 2006) ..................................................................24

*S.C. Johnson & Son, Inc.* v. *Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001) ..................................................................20

*Stokely-Van Camp, Inc.* v. *Coca-Cola Co.*,
   646 F. Supp. 2d 510 (S.D.N.Y. 2009) .......................................................16

*Time Warner Cable, Inc.* v. *DirecTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007) ..................................................*passim*

*Typehouse, Inc.* v. *Corbett*,
   No. CV000436981S, 2001 WL 273186 (Conn. Super. Ct. Mar. 1,
   2001) ..................................................................25

*Verizon Directories Corp.* v. *Yellow Book United States, Inc.*,
   309 F. Supp. 2d 401 (E.D.N.Y. 2004) ..................................................19, 20

*Viggiano* v. *Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .......................................................17

*VIP Prods., LLC* v. *Kong Co. LLC*,
   No. 10 Civ. 998, 2011 WL 98992 (D. Ariz. Jan. 12, 2011) ..........................8

*Williams* v. *Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ..................................................*passim*

## STATUTES

Conn. Gen. Stat. § 42-115d ..................................................................24

Conn. Gen. Stat. § 42-115e..................................................................23, 24

**Page(s)**

**OTHER AUTHORITIES**

21 C.F.R. § 501.3..............................................................................................15

Louis Altman & Malla Pollack, 1A CALLMANN ON UNFAIR COMPETITION,
    TRADEMARKS & MONOPOLIES (4th ed. 2014)...............................................19

J. Thomas McCarthy, 5 MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION (4th ed. 2014)........................................................................21

Fed. R. Civ. P. 8.............................................................................................3, 7

Fed. R. Civ. P. 12..........................................................................................2, 6

Robert Langer, John Morgan & David Belt, 12 CONN. PRAC., UNFAIR
    TRADE PRACTICES (2014 ed.) ...................................................................23, 24

Plaintiff Blue Buffalo Company Ltd. ("Blue Buffalo") respectfully submits this memorandum of law in opposition to the motion brought by Defendant Nestlé Purina PetCare Company ("Nestlé Purina") to dismiss the First Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Pet food manufacturer Blue Buffalo alleges that Nestlé Purina falsely advertises that its dog and cat foods have qualities that they do not have.  The Complaint alleges, with great factual detail and specificity, that in television commercials, print advertising, websites and packaging, Nestlé Purina falsely claims:  (1) that high-quality ingredients like salmon, "real seafood," "real beef," bacon and rice are the main ingredients of Nestlé Purina's most popular products, when in fact those ingredients are non-existent or only a tiny portion; (2) that certain Nestlé Purina pet foods are made with human-quality ingredients like filet mignon, when in fact they are not; (3) that Nestlé Purina's **_Just Right_** dog food is a "personalized" and "unique blend" tailored to each dog's individual needs, when it is not; and (4) that certain Nestlé Purina products are healthy for pets, when in fact Nestlé Purina knew they caused sickness and death.

Accepting these allegations as true, which the Court must on this motion, Blue Buffalo has more than sufficiently alleged that Nestlé Purina's advertisements are false and misleading in violation of the Lanham Act, the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Sales Practices Act ("CUSPA"), and constitute unfair competition under Connecticut common law.

Nestlé Purina does *not* argue that Blue Buffalo has failed to allege the requisite elements of any of these claims, or failed to allege these claims with factual particularity.  Instead, Nestlé Purina moves to dismiss the Complaint based on what are,

at best, its *factual* defenses.  And it asks the Court to make *factual* determinations at the pleading stage.  There is no precedent under Rule 12(b)(6) for any of the asserted grounds for dismissal.

   *First*, Nestlé Purina argues, as if the parties were already at trial, that "no reasonable consumer" would be deceived by the challenged advertisements.  That conclusory assertion is a question of fact, not a basis for a motion to dismiss a Lanham Act claim.  The Second Circuit has so held, as have numerous district courts in this Circuit. Nestlé Purina's argument is not supported by a single Lanham Act decision.

   *Second*, Nestlé Purina asserts that its ingredient labels supposedly comply with industry "labeling conventions," and therefore all of its television commercials, websites and packages are immune from Lanham Act liability.  That is not the law.  Quite the opposite:  the Supreme Court, in a decision Nestlé Purina does not even mention, directly rejected that argument.  *See POM Wonderful LLC* v. *Coca-Cola Co.*, 134 S. Ct. 2228 (2014).

   *Third*, in a rehashing of its first two arguments, Nestlé Purina contends that any "ambiguity" caused by its advertising is "clarified" by the ingredient lists on its packages.  At best, this is another factual defense that is not appropriate for a pleading motion.  The courts in this Circuit have held that an ingredient list on the back of a product does not shield a manufacturer from liability for false statements made elsewhere on the product, much less in television or print advertising.  Again, Nestlé Purina cites no Lanham Act case law to support its motion.

   *Fourth*, Nestlé Purina retreats to the familiar refuge of false advertisers: the product misrepresentations in its advertising are "mere puffery" and no one believes

them.  A television commercial that describes a product as "bacon" 10 times in 30 seconds is, if you believe Nestlé Purina, meaningless "hyperbole."  When a multi-billion dollar competitor wages a multi-million dollar advertising campaign, deliberately and falsely depicting a food product as made of a very specific ingredient, it is not engaged in innocuous exaggeration.  A motion to dismiss, respectfully, is not the occasion to debate such a fact-based defense, which turns on the evidence to be adduced at trial, not the notice in the pleading.  If Nestlé Purina persists in that defense, it can present it to the jury.  The Complaint, however, satisfies the pleading requirements of Fed. R. Civ. P. 8.

*Finally*, Nestlé Purina's argues that the scope and application of CUSPA is "unclear," and that there is no common law unfair competition cause of action in Connecticut.  But the scope and application of CUSPA as applied to these specific allegations is quite clear, and the common law tort of unfair competition is plainly recognized under Connecticut law.

Nestlé Purina's motion to dismiss should be denied.

<u>**THE COMPLAINT**</u>

The Complaint alleges that Nestlé Purina has disseminated false and misleading advertisements for ten pet food brands on television, in print, on its website, and on its packaging.  Those false and misleading representations, about the qualities and characteristics of Nestlé Purina's products, include the following.

1. <u>**Beggin' Strips**</u>

Nestlé Purina advertises in television commercials, on the web and on the packaging that its **Beggin' Strips** brand dog snacks are bacon and that the main ingredient is bacon.  That is false.  The complaint alleges—and Nestlé Purina has not disputed—that **Beggin' Strips** are made primarily of wheat, corn gluten meal, wheat flour, ground

3

yellow corn, water, sugar, glycerin, soybean meal and hydrogenated starch hydrolysate. The amount of bacon is less than any one of these non-bacon ingredients, and is only a tiny fraction of this processed product.  (Compl. ¶¶ 20-25.)

### 2. Cat Chow Naturals

Nestlé Purina advertises on television and on the packaging that salmon is one of the main ingredients in its ***Cat Chow Naturals***.  That is false.  The main ingredients of this cat food are chicken meal, corn gluten meal, soybean meal, brewers rice, animal fat preserved with mixed-tocopherols, and corn meal.  The amount of salmon is less than any one of these other ingredients, and is only a tiny fraction of this non-salmon product.  (*Id.* ¶¶ 26-28.)

### 3. Fancy Feast Filet Mignon Flavor with Real Seafood & Shrimp

Nestlé Purina advertises on the packaging and website for its ***Fancy Feast Filet Mignon Flavor with Real Seafood & Shrimp*** brand of cat food that this product is made with "Filet Mignon."  That is false.  The product contains no beef whatsoever and contains no meat that truthfully could be described as "filet mignon."  Nestlé Purina also advertises that "Real Seafood & Shrimp" are main ingredients in this product.  That is false.  The amount of fish and shrimp is a small portion of this processed product, and less than such non-seafood components as "poultry by-product meal," which consists of the carcass of slaughtered poultry, including necks, feet, undeveloped eggs and intestines.  Yet, Nestlé Purina advertises this product as a "Gourmet" food.  (*Id.* ¶¶ 29-31.)

### 4. Beneful

Nestlé Purina advertises on television and the packaging that its ***Beneful*** line of dog foods consists primarily of "Real Beef" and "Real Chicken."  That is false. The amount of beef and chicken is only a tiny fraction of these products.  (*Id.* ¶¶ 32-34.)

4

     **5.**    <u>**ONE SMARTBLEND and Pro Plan**</u>

     Nestlé Purina advertises on the packaging for its ***ONE SMARTBLEND*** brand of dog food and its ***Pro Plan*** brand of dog and cat food that all of those products contain "RICE."  That is false.  Rather than containing actual rice, a healthy and nutritious grain, these products contain no rice whatsoever and, instead, are made with a cheap filler with little or no nutritional value that is called "brewers rice."  (*Id.* ¶¶ 35-39.)

     **6.**    <u>**Chef Michael's**</u>

     Nestlé Purina's advertising for its **Chef Michael's** brand of dog food claims that the so-called "Tender Pieces" contained in the product are whole pieces of "Real Chicken" and "Real Beef," as pictured in the advertising and on the packaging. That is false.  The "Tender Pieces" contain soy products and other cheaper ingredients, and any meat components of the "Tender Pieces" are not the whole pieces of premium meat cuts pictured in the advertisements.  (*Id.* ¶¶ 40-42.)

     **7.**    <u>**Just Right**</u>

     Nestlé Purina advertises on its website that its ***Just Right*** dog food is custom-blended by Nestlé Purina to meet the individualized breed, age, size and eating preferences of customers' dogs, and thus provides "Food as unique as your dog," "Personalized nutrition for your dog," "Unique Blends," "Tailored Nutrition" and "a personalized blend to match your dog's nutritional needs."  All of that is false.  There is nothing "unique" or "personalized" about this mass-produced product.  ***Just Right*** consists of the same limited set of basic ingredients for every customer.  (*Id.* ¶¶ 43-48.)

     **8.**    <u>**Waggin' Train and Canyon Creek Ranch**</u>

     Nestlé Purina intentionally misled consumers with false and deceptive representations that its defective chicken and duck jerky dog treats—marketed under the

**Waggin' Train** and **Canyon Creek Ranch** brand names—were wholesome and suitable for consumption by dogs when, in fact, those products were known by Nestlé Purina to cause sickness and death in dogs.  (*Id.* ¶ 49.)

## <u>ARGUMENT</u>

Based on these highly specific and detailed factual allegations of false and misleading advertising by Nestlé Purina, the Complaint more than adequately states claims under the Lanham Act, CUTPA, CUSPA, and Connecticut unfair competition law.

Nestlé Purina's motion does not identify a single pleading deficiency in the Complaint.  Instead, it previews Nestlé Purina's defenses on the merits—*e.g*., that "reasonable consumers" are not deceived by the false ads; that the labels on the packages comply with industry standards; that the ingredient lists clarify any customer confusion; and that the television commercials and other advertisements are really just "puffery" that no one believes.  These defenses are (and will be) hotly contested issues of fact and, therefore, are not grounds for a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Time Warner Cable, Inc.* v. *DirecTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007); *Am. Home Prods. Corp.* v. *Johnson & Johnson*, 577 F.2d 160, 165-66 (2d Cir. 1978).

As the Court well knows, Nestlé Purina bears a heavy burden on its motion.  A motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack "facial plausibility."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Id.*

Taken as true, the "factual content" of this Complaint—including the specific advertisements at issue, the specific advertising claims in dispute, and the specific factual reasons why those claims are false, misleading and deceptive—easily meets and exceeds the pleading standard in Fed. R. Civ. P. 8.  Nestlé Purina's motion should be denied.

## A.     THE COMPLAINT STATES A CLAIM UNDER THE LANHAM ACT

To state a claim under the Lanham Act for false advertising, a plaintiff must allege that (1) the defendant made a false or misleading representation regarding the nature, characteristics or qualities of the defendant's or another's products, (2) in commerce, (3) in the context of advertising or promotion, and (4) caused damage to plaintiff.  *See FTA Mkt. Inc.* v. *Vevi, Inc.*, No. 11 Civ. 4789, 2012 WL 383945, at *4 (S.D.N.Y. Feb. 1, 2012); *Gmurzynska* v. *Hutton*, 257 F. Supp. 2d 621, 629 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004).  Product representations, like those made by Nestlé Purina about its pet foods, violate the Lanham Act if they are either "literally false" or "implicitly false."  *Time Warner Cable*, 497 F.3d at 153, 158 (an advertisement is literally false "[i]f the words or images, considered in context, necessarily imply a false message," whereas an advertisement is implicitly false if "plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers").

The Complaint here alleges each of these elements, and does so in abundant detail and particularity.  Since the issue of falsity is a factual one, Lanham Act pleadings like this are virtually never dismissed where the defendant, like Nestlé Purina, contends that the advertising is not false or misleading.  *See, e.g.*, *LivePerson, Inc.* v. *24/7 Customer, Inc.*, --- F. Supp. 3d ---, 2015 WL 249329, at *14-15 (S.D.N.Y. 2015)

(denying motion to dismiss Lanham Act false advertising claim because claim raised questions of fact "poorly suited to a determination at the pleadings stage"); *see also VIP Prods., LLC* v. *Kong Co. LLC*, No. 10 Civ. 998, 2011 WL 98992, at *3 (D. Ariz. Jan. 12, 2011) ("There is no dispute that the speech or packaging at issue is commercial in nature, nor that Plaintiff and Defendant are competitors.  The issues that remain . . . are fact-intensive inquiries not suitable for resolution in a motion to dismiss.").

Thus, Nestlé Purina's arguments, even if they had factual merit, and they do not, are not arguments for dismissal at the pleading stage.[1]

### 1.    Whether "Reasonable Consumers" Are Deceived by Nestlé Purina's False Advertising Is a Question of Fact, Not Grounds for Dismissal

Without citing a single Lanham Act precedent—because there is none—Nestlé Purina argues that the Lanham Act claims here should be dismissed because no "reasonable consumer" could be misled by any of its allegedly false television, print, website or packaging ads.  (Def. Mem. at 8-10.)  Apart from disregarding the actual pleading standard discussed above, this argument is a non-starter for the reasons demonstrated herein.

As an initial matter, Nestlé Purina relies entirely on cases involving state consumer protection statutes, primarily in California, not the Lanham Act.  Those California statutes involve different pleading and proof requirements than the Lanham Act.[2]  It is therefore no surprise that the so-called "reasonable consumer standard" Nestlé

---

[1]    Because, as Nestlé Purina acknowledges (Def. Mem. at 8 n.6), the false advertising claims at issue here are based on the same underlying factual allegations and involve the same basic legal standards, the Lanham Act analysis herein applies equally to Blue Buffalo's claims under CUTPA, CUSPA and Connecticut common law.

[2]    *Compare, e.g., Williams* v. *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[C]laims under these California [unfair competition and false advertising] statutes

Purina asks the Court to apply on this pleading motion is not based on any Lanham Act case law.

To the extent consumer perceptions are relevant at all to a Lanham Act claim, they are issues of fact for the trial on the merits and, therefore, cannot be resolved on a pleading motion.  Indeed, if the advertising is literally false, then evidence of consumer perceptions is irrelevant because consumer deception is presumed.  *See, e.g.*, *Time Warner Cable*, 497 F.3d at 153 ("When an advertisement is shown to be literally or facially false, consumer deception is presumed."); *see also Genzyme Corp.* v. *Shire Human Genetic Therapies, Inc.*, 906 F. Supp. 2d 9, 17-18 (D. Mass. 2012) ("At the pleading stage [plaintiff] is entitled to the benefit of a presumption of consumer deception because it has alleged the dissemination of literally false statements.").  Similarly, "where a plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public, and the defendant's conduct in this regard is of an egregious nature, a presumption arises that consumers are, in fact, being deceived." *Johnson & Johnson* v. *Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992) (internal quotes omitted). Evidence of actual consumer perceptions of the advertising—*e.g.*, surveys of consumer

---

are governed by the 'reasonable consumer' test.") *with FTA Mkt.*, 2012 WL 383945, at *4 ("To state a claim under this section, plaintiff must allege (1) defendants made a false or misleading representation . . . ; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) defendants' actions made plaintiff believe it would be damaged by the representations.") (internal quotes omitted). *See also Ingrid & Isabel, LLC* v. *Baby Be Mine, LLC*, , --- F. Supp. 3d ---, 2014 WL 5507669, at *9 (N.D. Cal. 2014) ("Under the Lanham Act, Defendants are prohibited from making a false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive. Under California's [Unfair Competition Law], the test is whether Defendants engaged in any unfair, deceptive, untrue or misleading advertising that was likely to deceive *the reasonable consumer* to whom the practice was directed.") (emphasis added, internal quotes omitted).

reactions to a television commercial—is generally relevant only to prove that an advertisement is implicitly false, and then only if defendant's misconduct is not intentional and egregious. *See, e.g., Nasdaq Stock Mkt., Inc.* v. *Archipelago Holdings, LLC*, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) ("If an implied falsehood is at issue, it is the perception of the relevant public, not the court, that determines whether an advertisement is misleading.").

In either case—literal falsity or implicit falsity—the question of whether the challenged advertising is false and misleading is an issue of fact. *Gordon & Breach Science Publishers* v. *Am. Inst. of Physics*, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994) ("The falsity of advertising is an issue of fact."); *Process Controls Int'l, Inc.* v. *Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 929 (E.D. Mo. 2010) (denying 12(b)(6) motion to dismiss Lanham Act false advertising claims and holding that "whether [a] claim is literally false is typically an issue of fact" and "[s]imilarly, whether a statement is misleading is generally a question of fact").

Courts in the Second Circuit hold that the factual question of whether an advertisement is false or misleading is *not* appropriate for resolution on a motion to dismiss.[3] As the Second Circuit explained, even in a case where consumer reactions are

---

[3] *See, e.g., Time Warner Cable*, 497 F.3d at 158 (holding that it is inappropriate to resolve on a motion to dismiss whether an advertisement is false or misleading because the court must look at external evidence "to determine what 'the person to whom the advertisement is addressed find[s] to be the message'" (quoting *Am. Home Prods.*, 577 F.2d at 166)); *Johnson & Johnson*, 960 F.2d at 297 ("It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive."); *Am. Home Prods.*, 577 F.2d at 165 (it is "well established that the truth or falsity of the advertisement usually should be tested by the reactions of the public"); *Koenig* v. *Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (denying motion to dismiss where product label included contradictory and/or confusing information about the contents, "[b]ecause it is

relevant, "the court's reaction [to an advertisement] is at best not determinative and at worst irrelevant." *Time Warner Cable*, 497 F.3d at 158 (internal quotes omitted).  Thus, a plaintiff must be permitted to "demonstrate, by extrinsic evidence, that the challenged commercials tend to mislead or confuse consumers."  *Johnson & Johnson*, 960 F.2d at 297.

Accordingly, Nestlé Purina's "reasonable consumer" arguments either are irrelevant or must be reserved for another day.  For example, Nestlé Purina suggests that "reasonable consumers" will intuitively know that the "Tender Pieces" in its **Chef Michael's** dog food are not the whole pieces chicken or beef pictured in the advertising because the packaging says that chicken or beef "is the *primary*, but *not the only* ingredient in the product."  (Def. Mem. at 22 (emphasis in original).)  As the images on the packaging make clear, however, the product consists not just of "Tender Pieces" but also of "Crunchy Kibbles."  (Compl. ¶ 40.)  Thus, based on the juxtaposition and equation of images of chunks of "Real Chicken" and "Real Beef" with the so-called "Tender Pieces," it would be reasonable for consumers to believe that the "Tender

---

unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled"); *In re Frito-Lay N.A. Inc. All Natural Litig.*, No. 12 MDL 2413, 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) (determination of whether consumers would be misled by the word "natural" on the product label generally cannot be determined on a motion to dismiss); *Ackerman* v. *Coca-Cola Co.*, No. 09 Civ. 395, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) (whether an advertisement is deceptive "'is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss'") (quoting *Williams*, 552 F.3d at 939); *see also Clorox Co. Puerto Rico* v. *Proctor & Gamble Co.*, 228 F.3d 24, 37 (1st Cir. 2000) ("The court was required to credit Clorox's allegations.  It could not conduct its own evaluation of the advertising copy because whether advertising is misleading depends on 'what message was actually conveyed to the viewing audience.'" (quoting *Johnson & Johnson*, 960 F.2d at 298)).

Pieces" are whole pieces of the chicken or beef pictured, and that the other ingredients in the product constitute the "Crunchy Kibbles."

In sum, defendant's yet to be proven, and potentially irrelevant, belief that consumers have not been misled provides no basis for this Court to dismiss any of the well pled Lanham Act allegations in the Complaint.[4]

### 2. Compliance With Labeling Conventions Is Not Grounds for Dismissing a Lanham Act Claim

Nestlé Purina tries to recharacterize all the allegations of false and misleading television commercials, print advertisements, websites and packaging as "mislabeling," and then argues that its labels cannot be actionable under the Lanham Act because they comply with FDA and AAFCO industry "labeling conventions."  (Def. Mem. at 13-14.)  In other words, Nestlé Purina asserts that it has immunity from Lanham Act liability for misrepresenting that ***Beggin Strips*** are bacon, or that salmon is one of the

---

[4]  Equally meritless is Nestlé Purina's argument that certain claims should be dismissed simply because it disputes the facts alleged. For example, the Complaint alleges that Nestlé Purina intentionally misled consumers by means of false and deceptive representations that its defective **Waggin' Train** and ***Canyon Creek Ranch*** jerky dog treats were wholesome and suitable for consumption by dogs at times when, in fact, those products were known by Nestlé Purina to cause sickness and death in dogs. (Compl. ¶ 49.)  Nestlé Purina argues that these detailed allegations do not state a claim because, at the time it made the representations in its advertising, there were merely "(unproven) allegations regarding the safety of" its **Waggin' Train** and ***Canyon Creek Ranch*** dog treats.  (Def. Mem. at 24.)  That statement, however, directly contradicts the well-pleaded allegations in the Complaint, which clearly claim that Nestlé Purina knew as a matter of fact that those products were causing sickness and death in dogs, and yet nonetheless it continued to promote and advertise those products as wholesome and suitable for consumption.  (Compl. ¶ 49.) Nestlé Purina cannot dismiss a claim as a matter of law simply by saying—without any factual support whatsoever—that it disagrees with the allegations in the Complaint. If that were the standard, then no false advertising complaint would ever survive a motion to dismiss.

main ingredients in ***Cat Chow Natural***, because regulatory and industry standards permit Nestlé Purina to use miniscule amounts of bacon and salmon.

Nestlé Purina cites no authority in support of this proposition.  More tellingly, it does not cite *POM Wonderful LLC* v. *Coca-Cola Co*, the recent case in which the Supreme Court rejected this very same argument.  Satisfying labeling requirements, the Court held, does not preclude the "comprehensive imposition of liability" under the Lanham Act for product misrepresentations, "including food and beverage labels."  134 S. Ct. at 2238.

POM  Wonderful  LLC  ("POM")  makes  and  distributes  various pomegranate juice products.  It filed a Lanham Act false advertising claim against Coca-Cola Company ("Coke"), which makes a juice blend labeled as "pomegranate blueberry," even though pomegranate juice and blueberry juice are only a tiny portion of the product.  The district court granted partial summary judgment for Coke, and the Ninth Circuit affirmed, based on Coke's argument that its compliance with FDA labeling requirements precluded the Lanham Act claim.  The Supreme Court reversed, holding that compliance with FDA labeling requirements does not preclude claims for false advertising under the Lanham Act.  *See id.*  "The position Coca-Cola takes in this Court that because food and beverage labeling is involved it has no Lanham Act liability here for practices that allegedly mislead and trick consumers, all to the injury of competitors, finds no support in precedent or the statutes."  *Id.* at 2241.

By arguing that "[a] label that fully complies with the uniform, adopted and nationally accepted labeling conventions cannot plausibly be false and misleading to a reasonable consumer" (Def. Mem. at 13-14), Nestlé Purina asks the Court to disregard

13

both the pleading—which alleges false television commercial and websites, not just labels—and the governing law.  Other attempts to confine or distinguish *POM Wonderful* in order to immunize advertisers from the Lanham Act have been rejected.  *See JHP Pharms., LLC* v. *Hospira, Inc.*, --- F. Supp. 3d ---, 2014 WL 4988016, at *4-5 (C.D. Cal. 2014) (rejecting the argument that *POM Wonderful* was limited to "food labels *only* and did not reach the labeling, marketing, or advertising" of other products, because "the arguments, logic and holding of *POM Wonderful* are couched in much broader language and strongly suggest a more wide-ranging application") (emphasis in original); *see also Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 375-76 (E.D.N.Y. 2010) ("Even if . . . the labeling meets the floor established by federal regulations, there is nothing to indicate that it could not still be misleading and therefore actionable under state consumer protection laws."); *Ackerman*, 2010 WL2925955, at *16 ("The fact that the actual sugar content of [the product] was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled.").

There is, in short, no precedent or principle under the Lanham Act for dismissing well-pled allegations of false and misleading advertisements simply because the fine print on the label conforms to FDA or industry requirements.  Nestlé Purina does not get a free pass to advertise that its **Beggin' Strips** dog snack is bacon when it is not (Compl.  ¶¶ 20-25), or that its supposedly customized ***Just Right*** dog food is

"personalized" and "unique" when it is not (*id.* ¶¶ 43-48), merely by meeting technical "labeling conventions."[5]   As the Complaint alleges in substantial detail, the issue of fact that remains to be tried is whether the challenged commercials, websites and packages, each taken as a whole, convey false product quality claims and deceive consumers.

### 3.   The Ingredient List on Nestlé Purina's Packaging Is Not Grounds for Dismissal

In a variation on its first two arguments, Nestlé Purina argues that any consumer confusion or deception is eliminated by the ingredient lists on the back of its packaging.  (Def. Mem. at 11.)  This too is a factual defense that is not appropriate for a motion to dismiss:  *e.g.*, whether a false or misleading claim about a product's main ingredient that appears on the front of package—let alone, on television or the web—is somehow off-set by the ingredient list on the back, is a question for trial.  Indeed, courts in this Circuit have held that the presence of an ingredient list on the back of a product does not immunize a manufacturer from liability for the false and misleading statements on the front of the packaging or in other advertising.

In *Ackerman* v. *Coca-Cola Co.*, for example, the court held that an accurate ingredient label "does not eliminate the possibility that reasonable consumers may be misled," recognizing that "even reasonable consumers may not read the

---

[5]   Also unavailing is Nestlé Purina's argument that FDA regulations permit it to refer to "brewers rice" as "rice" when advertising its **ONE SMARTBLEND** and ***Pro Plan*** products.  (Def. Mem. at 21.)  As an initial matter, the provision it cites simply says that a manufacturer must use "[a]n appropriately descriptive term" when identifying its dog and cat food products.  (Borders Decl., Ex. 43-3, 21 C.F.R. § 501.3(b)(3).)  Nowhere in that provision, or in any other FDA regulation, does it suggest—much less state—that a manufacturer may use a different ingredient name on the front of the package than it does on the back.  In any event, as discussed *supra*, even if Nestlé Purina's advertising of its **ONE SMARTBLEND** and ***Pro Plan*** products were

nutritional label prior to every purchase of a new product" and could rely on the very existence of a government-regulated nutritional label to vouchsafe for the accuracy of representations made elsewhere on a product's packaging. 2010 WL 2925955, at *16-17. In *Hughes* v. *Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013), the court held that a disclaimer on the back of a product does not, as a matter of law, eliminate a likelihood that consumers are misled by claims on the front of the product. *Id.* at 463-64.[6]

     *Ackerman* and *Hughes* both cite and adopt the Ninth Circuit's reasoning in *Williams* v. *Gerber Products Company*, 552 F.3d 934 (9th Cir. 2008). In *Williams*, the district court dismissed false advertising claims relating to fruit juice snacks on the ground that the products' ingredient list would ensure that the consumers were not deceived. *Id.* at 937. On appeal, the Ninth Circuit reversed, holding that an ingredient list on the side of a product does not bar claims based on false or misleading statements on the front of the product. *Id.* at 939. As the court explained:

---

consistent with FDA regulations, that fact, alone, does not immunize Nestlé Purina from well-pleaded claims of false advertising under federal and state law.

[6]   In support of its argument that "courts routinely find that when an alleged ambiguity on a label is clarified by the ingredient list, a label is not misleading as a matter of law" (Def. Mem. at 11), Nestlé Purina cites one decision in this Circuit: *Stokely-Van Camp, Inc.* v. *Coca-Cola Co.*, 646 F. Supp. 2d 510 (S.D.N.Y. 2009). That case, however, involved neither an ingredient list nor a finding that a label is not misleading as a matter of law. Instead, that case involved a motion for a preliminary injunction, where the plaintiff bore the burden of establishing a likelihood of success on the merits. *Id.* at 523-24. Here, by contrast, Blue Buffalo is entitled to every reasonable inference in opposing Nestlé Purina's motion to dismiss. Moreover, that case involved a sports drink that "clearly states" on its label that it is "Not a significant source of . . . calcium," and thus the court found that any consumer who was concerned about calcium intake would appreciate that the drink is not a significant source of calcium. *Id.* at 531. Thus, unlike here, the critical, clarifying information was not buried in small print in the ingredient list on the back of the product.

> We do not think that the FDA requires an ingredient list so
> that manufacturers can mislead consumers and then rely on
> the ingredient list to correct those misinterpretations and
> provide a shield for liability for the deception.

*Id.*[7]

Also on point is *Lam* v. *General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D.

Cal. 2012).   There, the defendant moved to dismiss on the ground that advertising its

"Fruit Roll-Ups" and "Fruit by the Foot" as being "made with real fruit" (a) was

objectively true, and (b) consumers would not interpret such advertising as making any

representations regarding the identity or quantity of fruits.   The motion was denied

---

[7]   Nestlé Purina cites to three Central District of California decisions—none of which involves a claim for false advertising under the Lanham Act or CUTPA—that disregard the express holding of the Ninth Circuit in *Williams* and the numerous cases (including *Lam*, *infra*) that have followed the Ninth Circuit's directive.   (Def. Mem. at 11-12.)   As other courts have recognized, by relying on pre-*Williams* case law, the cases upon which Nestlé Purina relies are "[p]ushing against the boundaries of the holding in *Williams*," rather than fitting squarely within it.   *Gedalia* v. *Whole Foods Mkt. Servs., Inc.*, --- F. Supp. 3d ---, 2014 WL 5315030, at *7 (S.D. Tex. 2014).   Those decisions are also clearly distinguishable from the circumstances here. *See Pelayo* v. *Nestlé USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (finding that use of the phrase "all natural" is not misleading because "the reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes") (internal quotes omitted); *Viggiano* v. *Hansen Natural Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013) (finding that the use of the phrase "all natural flavors" was not misleading because plaintiff failed to allege the existence of any artificial flavors in the drink, and noting that if consumers wanted to know whether any artificial non-flavor ingredients were present, he or she could check the ingredient list); *Hairston* v. *S. Beach Beverage Co.*, No. 12 Civ. 1429, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (finding, with respect to a drink that prominently advertised itself as being "all natural with vitamins," that the phrase was reasonably read such that "all natural" was modified by the term "with vitamins" and thus there was no implication that "the added vitamins are suppose[d] to be 'all natural vitamins'").   Moreover, the decision in *Pelayo* has been criticized because it "is at odds with basic logic, contradicts the [Federal Trade Commission] statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit" in *Williams*.   *Jou* v. *Kimberly-Clark Corp.*, No. 13 Civ. 3075, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013).

because, after seeing the products' name and marketing as a whole, "a reasonable consumer might be surprised to learn that a substantial portion of each serving of the Fruit Snacks consists of partially hydrogenated oil and sugars." *Id.* at 1104. The court found that consumers could not be expected "to look beyond 'made with real fruit' in order to discover the truth in small print." *Id.*

The motion here should be denied for the same reason. When presented with television commercials and other advertising for Nestlé Purina's pet foods, which deliberately highlight that the products are made primarily with appealing ingredients (*e.g.,* bacon, salmon, filet mignon), consumers should not be expected to inspect the small print to discover that the main ingredients are really the carcass of a slaughtered chicken and other unappetizing fillers. (*See, e.g.,* Compl. ¶¶ 20, 27, 30.)[8]

### 4. Defending the False Advertisements as "Puffery" Is Not Grounds for Dismissal

Nestlé Purina argues that *some* of the challenged ads "constitute nothing more than puffery." (Def. Mem. at 24.) This is yet another factual defense that, if it is to be raised at all, should be raised at trial. Nestlé Purina fails to cite any case in this Circuit where a motion to dismiss a false advertising claim was granted based on a puffery

---

[8]   Nestlé Purina argues that the advertising for its ***Fancy Feast Filet Mignon Flavor with Real Seafood and Shrimp*** product is not false and misleading because "[c]onsumers are widely aware of and experienced with 'flavors' and the use of 'flavor' as a qualifier in food labeling." (Def. Mem. at 17.) But the only authority it cites for that proposition is *McKinniss* v. *Sunny Delight Beverages Co.*, 07 Civ. 2304, 2007 WL 4766525, at *4-5 (C.D. Cal. Sept. 4, 2007), the holding of which turned on compliance with FDA regulations and the presence of nutritional information on the back of the label, and thus has effectively been overruled by the Supreme Court's subsequent decision in *POM Wonderful* and the Ninth Circuit's subsequent decision in *Williams* v. *Gerber*.   In any event, the decision in *Sunny Delight* in no way suggests that the addition of the word 'flavor'—on its own—is sufficient to inform consumers that the product in fact contains none of the listed ingredient.  Nestlé Purina simply does not cite any such authority.

defense.  Motions to dismiss routinely are denied on this basis because the question of what constitutes puffery generally cannot be resolved without evidence of how the advertisement is perceived by actual consumers.  *See, e.g., Verizon Directories Corp.* v. *Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407-08 (E.D.N.Y. 2004) (denying motion to dismiss false advertising claim based on puffery because a fair evaluation of what was being communicated and what was being understood by an advertisement must be based on evidence and not just on the pleadings); *Nasdaq Stock Mkt., Inc.*, 336 F. Supp. 2d at 305 (denying motion to dismiss false advertising claim based on puffery because puffery defense "necessitates a fact-specific determination of whether the advertisements at issue contain an implied falsehood sufficiently specific to mislead the relevant consumers.").

Here, none of the Nestlé Purina advertising at issue comes close to satisfying the standard for puffery.  None of the advertising involves "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Time Warner Cable*, 497 F.3d at 160.  Nor do they involve "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Id.*  Instead, each of the challenged advertisements "describe[s] the contents of a [pet] food product in ways consumers might reasonably rely on in choosing to purchase [it]." *Ackerman*, 2010 WL 2925955, at *17. That is not puffery.  *See id.*  It is not puffery to misrepresent specific characteristics and attributes of the product advertised.  *See* Louis Altman & Malla Pollack, 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS & MONOPOLIES § 5:26 (4th ed. 2014) ("Claims that misrepresent specific characteristics of a product and that will affect consumers'

purchasing decisions are not puffing."); *Williams*, 552 F.3d at 939 n.3 (factual misrepresentations are not puffery).

Moreover, Nestlé Purina effectively concedes that none of the advertisements viewed in their entirety constitute puffery. It argues only that certain isolated words or images are puffery. (Def. Mem. at 24-29.) In doing so, Nestlé Purina ignores the fundamental principle that a court must "consider the advertisement in its entirety and not . . . engage in disputatious dissection." *S.C. Johnson & Son, Inc.* v. *Clorox Co.*, 241 F.3d 232, 239 (2d Cir. 2001) (internal quotes omitted). That certain discrete elements of a false and misleading advertisement could—taken out of context— arguably constitute puffery does not render the advertisement immune from liability. *See, e.g., Williams*, 552 F.3d at 939 n.3.

For example, Nestlé Purina argues that the reference to bacon in its **Beggin' Strips** television commercials—as seen through the eyes of "an overly excited, talking dog"—is "obviously hyperbolic." (Def. Mem. at 25-26.) That argument mistakes entertainment for hyperbole. The consistent and repeated highlighting of bacon in the commercial, both in words and realistic images, culminating in a *human* voiceover declaring that **Beggin' Strips** are "made with real bacon" (Compl. Ex. A), is not "meaningless bluster." As we have alleged, and as we will prove at trial, it is a concrete and specific representation to consumers that bacon is one of the primary ingredients in the product, when in fact it is not. *See Ackerman*, 2010 WL 2925955, at *17. That is so even though, to some viewers, the commercial may seem "humorous." *See Verizon Directories*, 309 F. Supp. 2d at 407 (commercials that "are merely playful and absurd" cannot be characterized as "mere puffery" on a motion to dismiss); *Charter Commc'ns,*

20

*Inc.* v. *Sw. Bell Tel. Co.*, 202 F. Supp. 2d 918, 929-30 (E.D. Mo. 2001) (the mere fact that a television commercial is humorous does not mean that the advertisement does not misrepresent a statement of fact, and thus is not puffery); J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 27:56 (4th ed. 2014) ("Dramatic television presentations of the product cannot be dismissed as puffing fantasies if they convey some clear and false message.").

Nestlé Purina also offers no explanation of how the repeated use of the terms "Unique Blends," "Tailored Nutrition" and "a personalized blend to match your dog's nutritional needs" in advertising for its ***Just Right*** dog food constitutes puffery. Those terms communicate statements of fact, not opinion.  Nestlé Purina's puffery argument is limited to the phrase "the best nutrition."  (Def. Mem. at 27.)  But that phrase cannot be taken out of context and isolated from the advertising as a whole, which communicates to consumers that ***Just Right*** is, as a matter of objective fact, "personalized" and "unique" because it offers ingredients specifically "tailored" for each individual dog.  *See Pizza Hut, Inc.* v. *Papa John's Int'l, Inc.*, 227 F.3d 489, 501-02 (5th Cir. 2000) (finding that the phrase "Better Ingredients. Better Pizza.", in the context of ads concerning defendant's sauce and dough, is "no longer mere opinion, but rather takes on the characteristics of a statement of fact").

Similarly, Nestlé Purina seeks to isolate a single element of its false and deceptive ***Beneful*** advertising, ignoring the full context and overall message of the ad. Nestlé Purina argues that the cascade of human-grade beef and chicken depicted in its ***Beneful*** advertising is puffery because no consumer could possibly believe that the dog food contains human grade meat.  (Def. Mem. at 27.)  But by highlighting prominent and

repeated images of human-grade beef and chicken in the context of products labeled "Original With Real Beef" and "Healthy Fiesta With Real Chicken," Nestlé Purina communicates the false and misleading message that beef or chicken is one of the primary ingredients of *Beneful*.  That is a factual assertion about the product's ingredients, not mere bluster or opinion.  *See Ackerman*, 2010 WL 2925955, at \*17 (advertisement that "describe[s] the contents of a [pet] food product in ways consumers might reasonably rely on in choosing to purchase" it is not mere puffery).

Blue Buffalo alleges that the television commercial for *Cat Chow Naturals*, which prominently emphasizes—through words and images—that the product is made with salmon, falsely communicates to consumers that salmon is one of the main ingredients in the product, when in fact it is not.  (Comp. ¶¶ 26-28.)  In response, Nestlé Purina argues that the phrases "the better you eat, the better you feel" and "these days we both eat smarter" in the commercial are mere puffery.  (*See* Def. Mem. at 28.)  But whether those two isolated statements, standing alone, would constitute puffery is irrelevant.  What matters is that in the full context of the *Cat Chow Naturals* commercial, which features a large filet of salmon and a voiceover stating as a fact that the product is "made with real chicken and salmon," these words and images falsely communicate to consumers that salmon is one of the main ingredients of *Cat Chow Naturals*.

Finally, Nestlé Purina argues that its use of the words "gourmet" and "100% Complete & Balanced Nutrition" on the packaging for *Fancy Feast Filet Mignon Flavor with Real Seafood & Shrimp* is mere puffery.  But whether those two isolated elements, on their own, would constitute puffery is irrelevant.  What matters is that in the full context of the *Fancy Feast Filet Mignon Flavor with Real Seafood & Shrimp*

22

packaging, those elements, when combined with the name of the product, contribute to the false message that "filet mignon" and "real seafood & shrimp" are among the main ingredients.

## B.     BLUE BUFFALO'S CUSPA CLAIM IS ACTIONABLE

Blue Buffalo has brought a claim under Connecticut General Statute § 42-115e(a), which is a part of the Connecticut Unfair Sales Practices Act.  Section 42-115e(a) provides:

> A person likely to be damaged by a deceptive trade practice of another may be granted an injunction enjoining such practice under the principles of equity and on terms that the court considers reasonable.  Proof of monetary damage, loss of profits, competition, actual confusion or misunderstanding or intent to deceive is not required.

Nestlé Purina suggests, in a footnote, that much of CUSPA was repealed in 1973, and that "it is unclear at this point as to what conduct § 42-115e applies." (Def. Mem. at 1, n.1.)  In support, Nestlé Purina cites *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, No. X08CV030196141S, 2013 WL 3958298, at *4 (Conn. Super. Ct. May 24, 2013) and Robert Langer, John Morgan, and David Belt, 12 CONNECTICUT PRACTICE SERIES, CONNECTICUT UNFAIR TRADE PRACTICES, BUSINESS TORTS, AND ANTI-TRUST §6.9 (2012-2013 ed.) ("Langer").

To the extent this footnote is intended to imply that § 42-115e(a) is not a valid cause of action in Connecticut, Nestlé Purina has misinterpreted Connecticut law. Both federal and state courts continue to recognize that § 42-115e(a) allows a party to bring a claim for an injunction when it is likely to be damaged by a deceptive trade practice of another.  *See A & R Body Specialty* v. *Progressive Cas. Ins. Co.*, 07 Civ. 929, 2013 WL 718622, at *5 (D. Conn. Feb. 27, 2013) (denying motion to dismiss complaint

23

bringing a claim under §42-115e); *RW Grp., Inc.* v. *Pharmacare Mgmt. Servs., Inc.*, No. X07CV054003840S, 2006 WL 1320225, at *12 (Conn. Super. Ct. Apr. 27, 2006) (granting temporary injunction under §42-115e).

      If Nestlé Purina intends to imply that its conduct does not fall under § 42-115e(a), this similarly misapprehends Connecticut law.  The issue identified by *Artie's Auto Body* and by Langer is how broadly to define the term "deceptive trade practices" in § 42-115e(a)—*i.e.*, "whether 'deceptive trade practice' as used in section 42-115e should be given the definition provided in the now repealed section 42-115d, or whether it should be given the broader meaning of 'deceptive acts or practices in the conduct of any trade or commerce' which has developed under CUTPA."  Langer, 12 CONNECTICUT PRACTICE SERIES § 6.9.  The distinction is irrelevant here, because Nestlé Purina's conduct implicates either definition.  Nestlé Purina's deceptive advertising violates Section 42-115d of CUSPA by (among other things) "represent[ing] that [its products] have ingredients, uses, benefits or quantities that they do not have" and "represent[ing] that [its products are] of a particular standard, quality or grade [when] they are not."  *Id.* And Nestlé Purina's false advertising is a deceptive act or practice under CUTPA for the reasons discussed *supra*.

      Accordingly, Blue Buffalo has stated a valid claim for violation of the Connecticut Unfair Sales Practice Act.

## C.    BLUE BUFFALO'S COMMON LAW UNFAIR COMPETITION CLAIM IS ACTIONABLE

      Nestlé Purina argues that Blue Buffalo's claim alleging common law unfair competition should be dismissed because there is no such cause of action in Connecticut.  (Def. Mem. at 29.)  In support, it cites to *Mountain West Helicopter, LLC* v.

*Kaman Aerospace Corp.*, 310 F. Supp. 2d 459, 461 n.1 (D. Conn. 2004).  That case, however, merely states that "[t]he court is not aware of any Connecticut common law cause of action for unfair trade practices."  *Id.*  Blue Buffalo has not brought a common law claim for unfair trade practices.  Rather, it has brought a claim alleging unfair competition, a tort that is plainly recognized under Connecticut law.  *See, e.g., QSP, Inc.* v. *Aetna Cas. & Sur. Co.*, 256 Conn. 343, 371 (2001) ("In order for a plaintiff to sustain a cause of action for unfair competition, there must be some evidence in the record that the defendant misappropriated a commercial or business advantage.").  Indeed, the *QSP* court explicitly recognized the existence of such a tort in the context of advertising injuries.[9] *Id.* at 372.  Other courts in Connecticut similarly have recognized a cause of action for common law unfair competition.  *See, e.g., Baer* v. *New Eng. Home Delivery Servs., LLC*, No. CV064021976, 2007 WL 3173701, at *4 (Conn. Super. Ct. Oct. 18, 2007) (recognizing "the body of law addressing common-law unfair competition"); *Typehouse, Inc.* v. *Corbett*, No. CV000436981S, 2001 WL 273186, at *2-3 (Conn. Super. Ct. Mar. 1, 2001) (recognizing "the common law action of unfair competition" and declining motion to strike claim).

Nestlé Purina also claims that *Mountain West Helicopter* stands for the proposition that "[i]n circumstances where a common law cause of action is pled, the court assumes that the complaint seeks to allege a CUTPA cause of action regardless of the plaintiff's failure to invoke the relevant statute."  (Def. Mem. at 29.)  That is not the holding of *Mountain West Helicopter*.  In that case, the plaintiff failed to specifically

---

[9]  Connecticut has recognized the tort of common law unfair competition in the context of false advertising for more than fifty years.  *See* Goss v. *Birnbaum Furniture Co.*, 21 Conn. Supp. 207, 210-11 (Conn. Super. Ct. 1959).

invoke CUTPA, but brought a claim for "unfair trade practice[s]."  310 F. Supp. 2d at 461 n.1.  The District Court therefore assumed that the plaintiff intended to bring a CUTPA claim, and analyzed the complaint accordingly.  *Id.*  Here, Blue Buffalo has brought a CUTPA claim, and then asserted a separate cause of action for common law unfair competition.  Unlike the plaintiff in *Mountain West Helicopter*, Blue Buffalo clearly intended to—and did—bring separate and independent causes of action for CUTPA violations and common law unfair competition.  Nestlé Purina is therefore subject to liability under both causes of action.  There is no reason to treat Blue Buffalo's common law unfair competition claim as a duplicative CUTPA claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Blue Buffalo respectfully requests that this Court deny Nestlé Purina's motion to dismiss.

Dated: February 6, 2015
      New Haven, Connecticut

      Respectfully submitted,

      WIGGIN AND DANA LLP

      By:    /s/ James I. Glasser
      James I. Glasser (ct07221)
      Kim E. Rinehart (ct24427)
      One Century Tower
      265 Church Street
      P.O. Box 1832
      New Haven, Connecticut 06508
      Tel: (203) 498-4400
      Fax: (203) 782-2889
      jglasser@wiggin.com
      krinehart@wiggin.com

      PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

      Martin Flumenbaum (admitted *pro hac vice*)
      Robert A. Atkins (admitted *pro hac vice*)
      Darren W. Johnson (admitted *pro hac vice*)
      1285 Avenue of the Americas
      New York, New York 10019
      Telephone: (212) 373-3000
      Facsimile: (212) 757-3990
      mflumenbaum@paulweiss.com
      ratkins@paulweiss.com
      djohnson@paulweiss.com

      *Counsel for Blue Buffalo Company, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2015, a copy of the foregoing Plaintiff's

Memorandum of Law in Opposition to Defendant's Motion to Dismiss The First

Amended Complaint was filed electronically and will be served by mail on anyone

unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties

by operation of the Court's electronic filing system or by mail to anyone unable to accept

electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this

filing through the Court's CM/ECF System.

By:  _/s/ James I. Glasser_____
James I. Glasser (ct07221)
**Wiggin and Dana LLP**
One Century Tower
265 Church Street, P.O. Box 1832
New Haven, CT  06508-1832
Tel: (203) 498-4313
Fax: (203) 782-2889
E-mail:  jglasser@wiggin.com