UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE BLUE BUFFALO COMPANY LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:15 CV 384 RWS |
| | ) | |
| NESTLÉ PURINA PETCARE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This false advertising suit is before me on Defendant Nestlé Purina Petcare Company ("Purina")'s Motion to Dismiss the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Blue Buffalo Company Ltd. ("Blue Buffalo") opposes the motion and the issues are fully briefed.  For the reasons set forth below, I will grant in part and deny in part Purina's motion to dismiss.

## Background

On October 15, 2014, Blue Buffalo filed this action against Purina in Connecticut state court alleging that Purina's advertising for several of its pet food products violates section 43 of 15 U.S.C. § 1125(a) ("the Lanham Act"), the Connecticut Unfair Trade Practices Act ("CUTPA"), provisions of the Connecticut Unfair Sales Practices Act ("CUSPA"), and Connecticut common law.  On November 10, 2014, Purina removed this action to the United States District Court for the District of Connecticut based on diversity jurisdiction.  On February 13, 2015, on Purina's motion and for the convenience of the parties, this case was transferred to this Court pursuant to 28 U.S.C. § 1404(a).

Blue Buffalo alleges that Purina has engaged in false advertising practices for ten of its pet food brands on television, in print, on its website, and on its packaging. In particular, Blue Buffalo challenges Purina's advertising for the following products: (a) ***Beggin' Strips***, for advertising bacon as the main ingredient of the dog snacks when they are made primarily of other ingredients with bacon consisting of only a tiny fraction of the product; (b) ***Cat Chow Naturals***, for advertising salmon as a main ingredient while salmon is only a tiny fraction of the product; (c) ***Fancy Feast Filet Mignon Flavor with Real Seafood & Shrimp***, for advertising that the product is made with "filet mignon" while the product does not contain any beef or filet mignon; and advertising that "real seafood and shrimp" are main ingredients in the product when fish and shrimp are only a small portion of the product; (d) ***Beneful,*** for advertising that the line of dog foods consist primarily of "Real Beef" and "Real Chicken," but beef and chicken only make up a tiny fraction of the product; (e) ***ONE SMARTBLEND*** and ***Pro Plan***, for advertising that these dog and cat food products contain "RICE," a healthy and nutritious grain, but instead are made with "brewers rice"; (f) ***Chef Michael's,*** for advertising the "Tender Pieces" in the product as "Real Chicken" and "Real Beef" when they are made of soy and other products and and any meat components are not whole pieces of premium meat cuts pictured in the advertisements; (g) ***Just Right,*** for advertising the dog food as personalized and custom-blended to meet the individualized breed, age, size and eating preferences of customers' dogs when there is nothing "unique" or "personalized" about the product because it consists of the same limited set of basic ingredients for every customer; and (h) ***Waggin' Train*** and ***Canyon Creek Ranch,*** for intentionally misleading consumers that its chicken and duck jerky dog treats were wholesome and suitable for consumption by dogs when the products were known by Purina to cause sickness and death.

Purina now moves to dismiss the Complaint, arguing that: (1) Blue Buffalo's Complaint fails to plead a plausible theory that a "reasonable consumer" would be deceived and injured by the challenged advertising; (2) the challenged advertisements for *Beggin' Strips, Beneful, Cat Chow Naturals, Just Right,* and *Fancy Feast* consist of non-actionable puffery; and (3) Blue Buffalo's common law claim for unfair competition under Connecticut law should be dismissed because no such cause of action exists.

Blue Buffalo opposes Purina's motion to dismiss. Blue Buffalo contends that it has asserted plausible claims sufficient to meet federal notice pleading requirements, and that Purina's arguments for dismissal are merely factual defenses, which are not appropriate bases for dismissing a complaint.

## Choice of Law

This case was transferred pursuant to 28 U.S.C. § 1404(a) from the District of Connecticut, where it was properly filed. As a result, the laws of Connecticut and the United States Court of Appeals for the Second Circuit govern this action. See Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 585-86 (8th Cir. 2007) ("[I]f a district court in one state transfers an otherwise properly filed case to a district court in another state solely '[f]or the convenience of parties and witnesses,' 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules of the state in which the transferor court sits."). See also Ruling Re: Motion to Transfer Venue [#48], Cause No. 3:14-cv-1665.

## Legal Standard

In ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed. R. Civ. P. (12)(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  While factual matter must be accepted as true, courts will not presume conclusory statements to be true.  Id. at 679.  Unlike state courts, which often require detailed statements of fact in a petition, the federal rules require only notice pleading.  Fed. R. Civ. P. 8(a); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 575 (2007).

**Discussion**

A.  Underline False Advertising Claims

Purina argues that the Complaint should be dismissed because an examination of the challenged advertisements shows that no "reasonable consumer" would be deceived as to the true nature of their products.  Purina advances several arguments in support of its motion.  I will address each of Purina's legal arguments and determine the appropriate legal standards to apply before analyzing whether Blue Buffalo has asserted plausible claims for each of Purina's challenged products.

*1.  False Advertising and the Reasonable Consumer Standard*

In the Second Circuit, a plaintiff must prove the following elements to succeed in a claim for false advertising under section 43(a) of the Lanham Act: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant or by a lessening of the goodwill associated with its products.[1] S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001).

Purina contends that, in evaluating whether a statement has actually deceived or has the tendency to deceive a substantial segment of its audience, a reasonable consumer standard applies. Although neither the parties, nor I, have found any Second Circuit case law that explicitly addresses whether the reasonable consumer standard applies to Lanham Act false advertising claims, it is reasonable to conclude that it does apply. The Second Circuit has discussed what a "reasonable buyer" would find to be deceptive in a Lanham Act case. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159 (2d Cir. 2007) ("If . . . no reasonable buyer would take [the representation] at face value, there is no danger of consumer deception and hence, no basis for a false advertising claim under the Lanham Act."). Additionally, the majority of the circuits apply the reasonable consumer standard to Lanham Act claims. See Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought. It is the standard for false advertising and unfair competition under the Lanham Act."); see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 252 (3d Cir. 2011); Mead Johnson & Co. v. Abbott Labs., 209 F.3d 1032, 1034 (7th Cir. 2000); United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998); Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 501 (5th Cir. 2000); JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc., 28 F. App'x

---

[1] The parties agree that the elements of Blue Buffalo's related claims for false advertising under Connecticut law are the same or substantially similar to those for a claim under the Lanham Act. As a result, my analysis of the Lanham Act claim will apply equally to Blue Buffalo's state law claims, with the exception of its claim for unfair competition, which will be discussed separately below.

207, 219 (4th Cir. 2002); <u>Hall v. Bed Bath & Beyond, Inc.</u>, 705 F.3d 1357, 1368 (Fed. Cir. 2013).

There are two different theories of recovery in a Lanham Act action for false advertising. "First, the plaintiff can demonstrate that the challenged advertisement is literally false." <u>Time Warner Cable, Inc.</u>, 497 F.3d at 153 (quoting <u>Coca–Cola Co. v. Tropicana Prods., Inc.</u>, 690 F.2d 312, 317 (2d Cir. 1982)). "Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." <u>Id.</u>

"When an advertisement is shown to be literally or facially false, consumer deception is presumed, and 'the court may grant relief without reference to the advertisement's [actual] impact on the buying public.'" <u>Time Warner Cable, Inc.</u>, 497 F.3d at 153 (quoting <u>Coca–Cola Co.</u>, 690 F.2d at 317). However, when plaintiffs bring an implied falsity claim, they are 'claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality'—a claim that 'invites a comparison of the impression, rather than the statement, with the truth.'" <u>Id.</u> (quoting <u>Schering Corp. v. Pfizer Inc.</u>, 189 F.3d 218, 229 (2d Cir. 1999)). "Therefore, . . . 'a district court *must* rely on extrinsic evidence [of consumer deception or confusion] to support a finding of an implicitly false message.'" <u>Id.</u> (emphasis in original) (alterations in original). In particular, "the district court must look to consumer data to determine what 'the person to whom the advertisement is addressed find[s] to be the message.'" <u>Time Warner Cable, Inc.</u>, 497 F.3d at 158 (quoting <u>American Home Products Corp. v. Johnson & Johnson</u>, 577 F.2d 160, 166 (2d Cir. 1978)). "It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." <u>Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.</u>, 960 F.2d 294, 297-98 (2d Cir. 1992) (quoting <u>Am. Home Prods.</u>, 577 F.2d at 166) (emphasis in original) (internal citations

omitted).  As a result, whether an advertisement is deceptive "is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss."  Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) (quoting Williams v. Gerber Products Co., 552 F.3d 934, 938–39 (9th Cir. 2008)).

However, that is not to say that resolution of a false advertising case on a motion to dismiss is always inappropriate.  Courts have dismissed false advertising and similar claims when, construing the factual allegations in the light most favorable to the plaintiff, the challenged advertising statements would not plausibly deceive a reasonable consumer.  See, e.g., Werbel v. Pepsico, Inc., No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (granting motion to dismiss claims based on California consumer protection statutes and noting that "in certain instances, the court may be in a position to consider the viability of the alleged consumer law claims based on its review of the product packaging" and therefore, "where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."); see also Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 287 (S.D.N.Y. 2014) (noting that the reasonable consumer test "may be determined as a matter of law or fact (as individual cases require)" in the context of a New York General Business Law claim).

## 2.  The Ingredient List

Purina argues that, as a matter of law, no reasonable consumer could be confused by its advertising and product packaging because its products all contain accurate ingredient statements.  Additionally, Purina argues that even if a consumer were confused by its advertising, the ingredient statements would clarify the confusion.  Blue Buffalo disputes that the

ingredient statement is dispositive of the deception inquiry. Additionally, Blue Buffalo contends that the effect an ingredient statement has on a consumer is a factual inquiry and therefore it is also an inappropriate determination in deciding a motion to dismiss.

While courts have found that an ingredient statement may serve to clarify a consumer's understanding of what is being advertised, the mere presence of an ingredient statement on the back of a product "does not eliminate the possibility that reasonable consumers may be misled." Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG), 2010 WL 2925955, at *16-17 (E.D.N.Y. July 21, 2010). Accordingly, the ingredient statements on Purina's products are relevant to whether a reasonable consumer would be misled by the challenged advertisements and product labels. However, Blue Buffalo is correct that the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry. As a result, much like the reasonable consumer determination, this matter, too, may be decided as a matter of law if, when construing the allegations in the light most favorable to the plaintiff, the plaintiff has not plead a claim that is plausible on its face. See e.g., Stokely–Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 531 (S.D.N.Y. 2009); Pelayo v. Nestlé USA,Inc., 989 F. Supp. 2d 973, 980 (C.D. Cal. 2013).

### 3. Regulatory Compliance

Purina claims that any representations made in their product labels "cannot plausibly be false and misleading to a reasonable consumer" because it has complied with the Food and Drug Administration ("FDA")'s product identification regulations and the Association of American Feed Control Officials ("AAFCO")'s pet food labeling regulations, which Connecticut has codified into state law. Despite Purina's argument to the contrary, there is no legal authority for the proposition that no reasonable consumer could be misled by labeling that complies with FDA

and AAFCO regulations.  Indeed, the United States Supreme Court has held that compliance with labeling regulations does not preclude "comprehensive imposition of liability" under the Lanham Act.  POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2238 (2014) (rejecting argument that because food and beverage labeling is involved there can be no Lanham Act liability).  While compliance with regulatory authority may be relevant to Purina's defense, it does not preclude liability for implied false advertising as a matter of law.

### 4. *Puffery*

Purina's final argument is that the challenged advertisements for its *Beggin' Strips, Beneful, Cat Chow Naturals, Just Right,* and *Fancy Feast* brands consist of non-actionable puffery.  Blue Buffalo disputes that the challenged advertisements, statements, and product labels, when taken together, are mere puffery.  Additionally, Blue Buffalo contends that the puffery determination is a factual inquiry and therefore inappropriate for a court to decide on a motion to dismiss.

Advertising claims that fall into the category of "puffing" do not constitute false advertising.  Time Warner Cable, Inc., 497 F.3d at 159.  As a result, puffery is not actionable under Section 43(a) of the Lanham Act.  Id.

Puffery is often identified as a "general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." Time Warner Cable, Inc., 497 F.3d at 160.  In the false advertising context, puffery includes "subjective claims about products, which cannot be proven either true or false."  Id. at 159 (citing Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir.1995)).  Where the challenged statement is an image, rather than words, puffery is better described as "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying."  Id. at 160.

That is because, "[u]nlike words, images cannot be vague or broad," but rather, are generally "specific and measurable." Id. at 159. As a result, even when images can be proven either true or false, "if a visual representation is so grossly exaggerated that no reasonable buyer would take it at face value, there is no danger of consumer deception and hence, no basis for a false advertising claim." Id.

Just like any other inquiry that ultimately rests on a factual determination, if, when accepting the plaintiff's factual allegations as true and construing them in the light most favorable to plaintiff, the plaintiff's claims are not plausible as a matter of law, they should be dismissed. See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990) (affirming dismissal of Lanham Act claim and holding that whether a statement is puffery is a legal question suitable for a motion to dismiss); see also Radio Today, Inc. v. Westwood One, Inc., 684 F.Supp. 68, 74 (S.D.N.Y.1988). In the puffery context, if the challenged advertisements are merely general claims of superiority or subjective claims which cannot be evaluated as true or false, then a court may dismiss those claims as non-actionable puffery as a matter of law. See Rizzo Constr. Pool Co. v. Riefler, 2003 WL 22962196, at *7 (Conn. Super. Ct. Dec. 3, 2003). However, if the evaluation of whether images constitute puffery depends on what a reasonable consumer would understand, then a court must consider extrinsic evidence of consumer impact. Time Warner Cable, Inc., 497 F.3d at 158 (quoting American Home Products Corp., 577 F.2d at 166). As a result, claims falling under this definition of puffery are likely generally improper for resolution on a motion to dismiss. See, e.g., Verizon Directories Corp. v. Yellow Book USA, Inc., 309 F. Supp. 2d 401, 407-08 (E.D.N.Y. 2004) (denying motion to dismiss false advertising claim based on puffery because a fair evaluation of what was being communicated and what was being understood by an

advertisement must be based on evidence and not just on the pleadings); <u>Nasdaq Stock Mkt., Inc.</u> <u>v. Archipelago Holdings</u>, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (denying motion to dismiss false advertising claim based on puffery because puffery defense "necessitates a fact-specific determination of whether the advertisements at issue contain an implied falsehood sufficiently specific to mislead the relevant consumers.").

     5.  *Analysis of the Challenged Advertisements*

     a.  ***Beggin' Strips***

Blue Buffalo alleges that Purina's television commercials and packaging for its *Beggin' Strips* dog treats mislead consumers into thinking "that the product is bacon" or that its main ingredient is bacon, when in fact bacon is listed tenth on the ingredient list. <u>See</u> [#25], Ex. C.

The following images are taken from Purina's television commercial for *Beggin' Strips*:



<u>See</u> [#25], Ex. A. The commercial shows a thought bubble with a picture of bacon appearing over a dog's head when a bag of the treats is opened. The dog jumps to its feet as a voiceover intended to be the dog's inner voice says "Bacon!" The dog runs around the house looking for the bacon, while the dog's "voiceover" repeats the word "bacon" over and over again. As the dog checks a pan on the stove to find it empty and turns to find the owner with the bag of *Beggin' Strips*, the voiceover says: "yummy, crunchy bacon, bacon, bacon! There in that bag." The word bacon is repeated 10 times. It is referenced throughout the commercial, including when a child's blocks spin around to spell "BACON" as the dog rushes by.

Blue Buffalo alleges that, along with the commercial, the fact that the treats are made to look like strips of bacon is misleading. Blue Buffalo also alleges that the *Beggin' Strips* packaging also reinforces the idea that *Beggin' Strips* are bacon, primarily because the text "made with real bacon" is included on the packaging, pictured here:



See [#25], Ex. B.

Purina counters that it does not advertise or imply that *Beggin' Strips* are comprised mainly of human quality bacon and that no reasonable consumer would draw that conclusion. Purina notes that the advertisements that reference bacon limit the description with qualifiers such as "made with real bacon" and "bacon flavored." Purina further argues that the ingredient list is transparent in showing that bacon is not a main ingredient, and that the label is in full compliance with AAFCO regulations. Finally, Purina contends that the *Beggin' Strips* advertisements are mere puffery because they are so "obviously hyperbolic" and exaggerated and that no reasonable consumer would take them at face value.

Reviewing the challenged statements, advertisements, and packaging under the appropriate standards, I find that Blue Buffalo has stated a plausible claim for false advertising under the Lanham Act. Purina's arguments may prove to be effective in summary judgment or at trial. However, because they center on a determination of what a reasonable consumer would believe, and because the Second Circuit requires courts to consider extrinsic evidence of consumer impact when determining whether a reasonable consumer would be misled, dismissing

these claims from the Complaint would not be appropriate at this stage of the case. Additionally, even if extrinsic evidence were not required, it is not clear that the challenged statements and advertisements, when viewed together and in context, are mere puffery. While Purina is correct that the *Beggin' Strips* commercial featuring a dog looking for bacon is hyperbolic, hyperbole does not prevent an advertisement from being misleading. See <u>Charter Commc'ns, Inc. v. Sw. Bell Tel. Co.</u>, 202 F. Supp. 2d 918, 929-30 (E.D. Mo. 2001).

### b. *<u>Beneful</u>*

Blue Buffalo alleges that Purina falsely advertises on television and on its packaging that the *Beneful* line of dog foods consists primarily of "Real Beef" and "Real Chicken," when in reality beef and chicken only make up a tiny fraction of the product. Blue Buffalo describes television advertisements for *Beneful* dog food, which "typically feature a cascade of apparently human-grade meats, vegetables and grains falling through the air." Blue Buffalo alleges that these images convey the false message that the dog food is comprised primarily of high-quality, wholesome ingredients. See [#25], Ex. H. A selected screenshot from the commercial is incuded here:



Blue Buffalo alleges that the *Beneful* packaging reinforces this message because it contains pictures of high-quality meats and produce and describes the *Beneful* line as containing "real" ingredients. For example, Blue Buffalo attaches an image of the label for the "Original With Real Beef" flavor, and the "Healthy Fiesta" flavor, which contains the phrase "With Real

Chicken and Wholesome Grains, Accented with Vitamin-Rich Vegetables and Avocado." An image of the "Original" flavor packaging is included here:



 See [#25] Ex. I.  Blue Buffalo alleges that beef is only ingredient number seven in the "Original" flavor, and that avocado is only ingredient number twenty in the "Healthy Fiesta" flavor.

Purina contrasts Blue Buffalo's allegations with its packaging and the ingredient list, arguing that nothing about the label is literally false, and that it is not plausible that the small photos of meat, alongside larger photos of corn, wheat and other ingredients (all of which are in the product), with the reduced type-faced "With Real Beef" deceives a reasonable consumer into believing that the illustrated dry dog kibble is "primarily real beef."  Purina also argues that the *Beneful* advertisements are mere puffery because it is not realistic or reasonable for a consumer to believe that dog food kibbles would feature pieces of fresh, human grade food as main ingredients.

Much like its challenges to the *Beggin' Strips* claims, Purina's arguments here focus mainly on what a reasonable consumer would understand.  Because such a determination requires the consideration of extrinsic evidence, I cannot find that the claim fails as a matter of law.  Furthermore, even if extrinsic evidence were not required, I cannot say that Blue Buffalo has failed to plausibly allege that repeated depictions of whole pieces of beef and avocado would mislead a reasonable consumer into thinking that the *Beneful* dog food contains greater amounts

of those ingredients.  As a result, dismissing these claims from the Complaint would not be appropriate at this stage of the case.

###    c.   *Cat Chow*

Blue Buffalo alleges that Purina's packaging and advertising for its *Cat Chow Naturals* dry cat food sends a false and misleading message that salmon is one of the main ingredients when it is only eighth on the ingredient list.  Blue Buffalo claims that this false and misleading message is evidenced by the packaging, which features a picture of a cutting board with a large cut of salmon filet, pictured here:



Blue Buffalo also cites to one commercial, titled "Coming Home," which it alleges draws a direct comparison between the owner's diet and the cat's diet, a screenshot from which is pictured here:



In the commercial, the cat's owner says that both she and the cat have started eating healthier.  A voiceover then states, "in time you realize: the better you eat, the better you feel," and "these days we both eat smarter."  The advertisement shows the cat's owner taking a large

filet of salmon out of the refrigerator just before feeding her cat with *Cat Chow Naturals*, while a voiceover states that *Cat Chow Naturals* is "made with real chicken and salmon."

Purina argues that the statements "in time you realize: the better you eat, the better you feel," and "these days we both eat smarter" in the commercial are mere puffery because they contain no objective or specific claims, but rather, are purely conjectural statements of opinion. Additionally, Purina argues that whether something is a "smart" choice cannot be verified or proven true or false, and therefore it is puffery. Blue Buffalo contends that whether those statements in isolation constitute puffery is irrelevant because the full context must be considered, and taken together, the statements and images falsely communicate that salmon is a main ingredient.

I agree with Purina that the statements "in time you realize: the better you eat, the better you feel," and "these days we both eat smarter" are mere puffery because they are simply subjective opinions that cannot be proven true or false. See Time Warner Cable, Inc., 497 F.3d 144, 159-160. However, when taken together with the challenged images in the commercial and on the packaging, it cannot be said that, as a matter of law, no reasonable consumer would think that salmon is a primary ingredient. Additionally, determining what a reasonable consumer would believe requires the consideration of extrinsic evidence. As a result, dismissing Blue Buffalo's claims alleging that salmon is falsely portrayed as a primary ingredient would not be appropriate at this stage of the case.

### d. *Fancy Feast Filet Mignon Flavor with Real Seafood and Shrimp*

Blue Buffalo alleges that the name of Purina's *Fancy Feast Filet Mignon Flavor with Real Seafood and Shrimp* is false and misleading because the product does not contain any filet mignon, nor does it contain beef of any kind. Rather, according to the Complaint, "filet mignon

flavor" is the seventeenth ingredient. Blue Buffalo also alleges that the part of the name "with real seafood and shrimp" is misleading because fish and shrimp are the eighth and ninth ingredients. Blue Buffalo further argues that advertising the brand as "gourmet" on Purina's website, and including a gold seal with the words "100% Complete & Balanced Nutrition" on the packaging, is false and misleading because this cat food is made with inferior ingredients. An image of the packaging is shown here:



Purina argues that its labeling is truthful, and the challenged statements would not mislead consumers into believing that the product contains filet mignon. Purina further argues that the statements are puffery, and to the extent that the word "gourmet" implies quality, "[g]eneral assertions of superiority, as opposed to factual assertions, are deemed 'puffery' that is unlikely to deceive as a matter of law." See, e.g., Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990) (citations omitted).

Applying the appropriate standards, I find that Blue Buffalo's Complaint does not plausibly establish that a reasonable consumer would believe that *Fancy Feast Filet Mignon Flavor with Real Seafood and Shrimp* contains the expensive ingredient filet mignon just because it is labeled as "filet mignon flavor." I also find that the use of the word "gourmet" is non-actionable puffery because it is a general assertion of superiority or opinion, incapable of being proven true or false. Furthermore, the gold seal with the phrase "100% Complete & Balanced Nutrition" is mere puffery, despite containing a potentially quantifiable metric of

"100%," because whether something is complete or balanced nutrition is merely an opinion about quality and is not capable of being proven true or false.  See Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("advertising terms like 'complete' are puffery because they are subjective and cannot be proven true or false") (citing Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir.1995)).  As a result, I will dismiss Blue Buffalo's claim to the extent it alleges that the advertisements falsely imply superiority or contain filet mignon.

However, Blue Buffalo has sufficiently plead that the other challenged statements and images, when taken together, could plausibly mislead a reasonable consumer into thinking that the product contains at least some beef, or that seafood and salmon are primary ingredients.  As a result, dismissing Blue Buffalo's claim that Purina's advertising for its *Fancy Feast Filet Mignon Flavor with Real Seafood and Shrimp* is false and misleading because a reasonable consumer would believe that seafood and shrimp are main ingredients, or that beef is an ingredient, would not be appropriate at this stage of the case.

### e.  __ONE SMARTBLEND__ **and** ___Pro Plan___

The Complaint alleges that the advertising and packaging for Purina's *ONE SMARTBLEND* brand of dog food and the *Pro Plan* brand of dog and cat food are false and misleading because they are advertised as containing rice, which conveys the false message that those products are made with a healthy and nutritious grain, when in fact those products are made with brewers rice, a filler with little or no nutritional value.  For example, the word "rice" is in the name of the *ONE SMARTBLEND* "Lamb and Rice Formula," "Chicken and Rice Formula," and "Small Bites Beef and Rice Formula," as well the *Pro Plan* "Salmon & Rice Formula."

Purina argues that Blue Buffalo has failed to provide any factual support for the allegation that brewer's rice is a filler with little or no nutritional value. Purina further argues that the ingredient labels specify that the products contain "brewer's rice," and therefore the label is not false.

While Blue Buffalo's allegations are not well-supported in the Complaint, it did allege that brewer's rice:

> is part of the fractionated debris left over from whole rice that has been milled, and the saleable rice has been separated. It is the dross that remains otherwise unusable in the production of white rice from whole grain rice. Brewers rice does not contain many of the nutritional benefits of whole grain rice or even the lower nutritional benefits of white rice sold for human consumption. Brewers rice therefore is used primarily as cheap filler in animal feeds.

Compl. ¶ 37. Accepting these factual allegations as true, and under the appropriate standards, I find that Blue Buffalo has "nudged their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). As a result, dismissing these claims from the Complaint would not be appropriate at this stage of the case.

## f. *Chef Michael's*

Blue Buffalo alleges that the advertising and packaging for Purina's *Chef Michael's* brand of dog food is false and deceptive because it sends the message that the dog food is made with quality pieces of chicken and beef when it is not. An image of the packaging, as well as a close-up of the label of the *Chef Michael's* "Oven Roasted Chicken Flavor" is reproduced below:



Blue Buffalo alleges that the images and wording on the packaging convey the false message that the "Tender Pieces" are whole pieces of chicken, when in fact they include soy products and other ingredients. Blue Buffalo also alleges that the *Chef Michael's* website tagline, "It's not just dog food. It's Chef Michael's" falsely suggests that the product consists of high-quality, human grade beef and chicken as you would expect to be prepared by a "Chef" rather than soy and other cheaper ingredients.

Purina contends that the images do not convey this message, and that the "Tender Piece" pictured is "clearly dried dog food." Additionally, Purina argues that the packaging language and the ingredient label accurately convey that chicken is a primary ingredient, and never implies that it is the only ingredient.

Blue Buffalo's allegation that consumers would believe that *Chef Michael's* is made by a chef is a conclusory allegation with no factual support. I cannot say, however that it is implausible that the images of the "Tender Pieces" would mislead a reasonable consumer into thinking those pieces are whole pieces of chicken. As a result, dismissing Blue Buffalo's claim that Purina's advertising and packaging falsely mislead consumers into thinking the "Tender Pieces" are whole pieces of chicken would not be appropriate at this stage of the case.

**g.** ***Just Right***

Blue Buffalo alleges that Purina's advertisements for its *Just Right* brand of dog food are false and deceptive because they suggest that Purina will create and deliver a "unique blend" of ingredients to each consumer. For example, the Complaint alleges that, on the JustRightPetFood.com website, Purina offers "Food as unique as your dog," "Personalized nutrition for your dog," "Unique Blends," "Tailored Nutrition" and "a personalized blend to match your dog's nutritional needs." Purina allegedly reinforces the deception that its *Just Right* dog food is personalized for each dog by requiring dog owners to fill out a "pet profile" for his or her dog in which the owner must identify characteristics including the dog's breed, age, weight, level of activity, coat quality, and stool consistency. After answering all of the pet profile questions, the dog owner is presented with "Your Blend," which Blue Buffalo claims further contributes to the false message that the ingredient blend is personalized and unique to that specific owner's dog. Blue Buffalo alleges that these statements, taken together, are false and misleading because the *Just Right* dog food is not personalized or unique, but consists of only a limited set of basic ingredient formulas, each of which is substantially similar to the others, with variation only on the "protein preference" (lamb, chicken or salmon) and whether to exclude soy or grains from the formula.

A screenshot from the Just Right website is depicted here:



Blue Buffalo also alleges that Purina's advertisements state "we believe the best nutrition is personalized," which falsely communicates to consumers that *Just Right* is not only personalized, but also superior to other dog foods.

Purina argues that no reasonable consumer would believe that no other consumer can purchase the same formula based on the advertisements, but rather, consumers understand that this product provides consumers with a way to customize their pet food by selecting the ingredients. Additionally, Purina argues that the description of the food as "unique," along with the statement "we believe the best nutrition is personalized," is mere puffery because they are subjective statements of superiority that cannot be proven true or false. See Stokely–Van Camp, Inc., 646 F. Supp. 2d at 526 (finding claims that a product is "the" something is plainly puffery, "because consumers understand that the advertiser is not contending that the particular attribute or feature can only be found in its product."). Here, Purina argues that the assertion that "***the best nutrition*** is personalized" is exactly the sort of "general claim of superiority" and "mere expression of opinion" that cannot be interpreted as a factual claim.

Reviewing the Complaint under the appropriate standards, I find that Purina's statements advertising *Just Right* as "the best" and claiming that "the best nutrition is personalized" are non-actionable puffery. As other courts have explained, advertising a product as "the best" is puffery because "consumers understand that the advertiser is not contending that the particular attribute or feature can only be found in its product." Stokely–Van Camp, Inc., 646 F. Supp. 2d at 526. Likewise, Purina's statement that "the best nutrition is personalized" is also non-actionable puffery because it is a subjective statement that cannot be proven true or false. See id.

However, I cannot find that, as a matter of law, Purina's advertisements as to the uniqueness and personalization of *Just Right* are mere puffery, or that they are not false or

misleading.  While Purina's arguments may be persuasive on summary judgment or at trial, I find that the Complaint sufficiently alleges that Purina's *Just Right* advertisements, taken together, suggest greater levels of personalization than they really contain.  As a result, dismissing Blue Buffalo's claim that Purina advertises *Just Right* dog food as providing greater levels of personalization than what is actually delivered would not be appropriate at this stage of the case.

### h.  ***Waggin' Train* and *Canyon Creek Ranch***

Blue Buffalo alleges that Purina intentionally misled consumers when it represented that its *Waggin' Train* and *Canyon Creek Ranch* chicken and duck jerky treats were wholesome and suitable for consumption by dogs when Purina knew that they caused sickness and death.  The Complaint alleges that Purina promoted these treats as being "natural," "wholesome," "healthy" and made from "only the most simple and pure ingredients."  It further alleges that Purina failed to disclose the material facts that the jerky treats: (i) had proven poisonous to dogs, and were implicated in the illness and/or deaths of hundreds of pets, (ii) were manufactured and processed in Chinese facilities that were not subject to the same oversight as their counterparts in the United States, and (iii) had been exposed to, or included, harmful ingredients, including illegal antibiotics, diseased bird parts, and/or other toxic ingredients.  Additionally, the Complaint alleges that Purina disregarded thousands of consumer complaints and multiple warnings from the United States Food and Drug Administration about the safety of these products, and instead continued to issue public statements falsely claiming that the treats were manufactured under "the highest quality and safety standards" and were not responsible for any illness, up and until it withdrew the jerky treats from the market in early 2013.

Purina contends that Blue Buffalo claims are merely conclusory allegations based on the existence of what it describes as "(unproven) allegations regarding the safety of all jerky style dog treats." Purina notes that Blue Buffalo did not attach the packaging or labeling for either the *Waggin' Train* or *Canyon Creek Ranch* products, nor did it provide any specific details on how the labeling was in fact false.

While Blue Buffalo's allegations are not supported with extrinsic evidence, they are also more than conclusory statements. Blue Buffalo has alleged that Purina marketed these products as natural, wholesome, and healthy pet foods, despite the occurrence of sickness and death in dogs that were consuming the products, and despite having received FDA warnings and consumer complaints about the products. Blue Buffalo further alleges that there were problems with Purina's manufacturing processes. Under the appropriate standards, I find that Blue Buffalo has sufficiently alleged its claim for false advertising for the *Waggin' Train* and *Canyon Creek Ranch* products. As a result, dismissing these claims from the Complaint would not be appropriate at this stage of the case.

B. Connecticut Common Law Claim for Unfair Competition

Purina argues that Blue Buffalo's claim alleging unfair competition under Connecticut common law should be dismissed because such a cause of action does not exist. Purina contends that courts construe claims alleging unfair competition to be claims brought under the Connecticut Unfair Trade Practice Act ("CUPTA"). Purina relies on Mountain W. Helicopter, LLC v. Kaman Aerospace Corp., 310 F. Supp. 2d 459, 461 n.1 (D. Conn. 2004), which noted that "[t]he court is not aware of any Connecticut common law cause of action for unfair trade practices . . . . [and] therefore assumes that the complaint alleges a CUTPA cause of action."

Purina's reliance on <u>Mountain W. Helicopter, LLC</u> is misguided. <u>Mountain W. Helicopter, LLC</u> discusses claims for unfair trade practices, not claims alleging unfair competition, which is recognized under Connecticut law. <u>See, e.g.</u>, <u>QSP, Inc. v. Aetna Cas. & Sur. Co.</u>, 256 Conn. 343 (2001); <u>TYR Sport, Inc. v. TYR Natural Spring Water, Inc.</u>, No. 3:12-CV-761 SRU, 2013 WL 2455925, at *3 (D. Conn. June 5, 2013). Furthermore, Blue Buffalo has sufficiently alleged a claim for unfair competition in the Complaint. As a result, Blue Buffalo's claim for unfair competition under Connecticut common law will not be dismissed.

### Conclusion

Under the appropriate standards, and reviewing the challenged advertisements, labels, and statements in context, I conclude that Blue Buffalo has sufficiently alleged the falsity or misleading nature of Purina's challenged advertisements for each of the challenged products. However, because some of the theories under which Blue Buffalo alleges false advertising violations do not meet federal pleading standards, those portions of Blue Buffalo's claims will be dismissed. As a result, Blue Buffalo shall amend its Complaint in accordance with the terms of this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED that** Purina's Motion to Dismiss #[39] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED that** Blue Buffalo shall file an amended complaint within twenty (20) days of this Order to bring it into conformity with the terms of this Order.

**IT IS FURTHER ORDERED that** Purina's Motion to Stay Discovery pending the

Court's ruling on its motion to dismiss #[72] is **DENIED** as moot.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 10th day of June, 2015.